IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO.  *3:14-cr-00126-MHT* |
| | ) | |
| | ) | [18 U.S.C. § 1347; |
| | ) | 21 U.S.C. § 331(a); |
| YASHICA ROBINSON WHITE, M.D. | ) | 21 U.S.C. § 333(a)(1)] |
| | ) | |
| | ) | **INDICTMENT** |

**FILED**

APR . 4 2014

The Grand Jury charges that:

**INTRODUCTION**

CLERK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA.

1.    At all times relevant to this Indictment:

a.    Defendant, YASHICA ROBINSON WHITE, M.D., was a physician licensed to practice medicine in the State of Alabama, with a primary practice area of obstetrics and gynecology.

b.    The United States of America, on behalf of the Department of Health and Human Services ("HHS"), administered both the Health Insurance Program for the Aged and Disabled established by Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395, *et seq.* ("the Medicare Program"), and Grants to States for Medical Assistance Program pursuant to Title XIX of the Act, 42 U.S.C. §§ 1396, *et seq.* ("the Medicaid Program").

c.    The Medicaid Program provided funding for medical and health-related services for certain individuals and families with low incomes and virtually no resources.  Those eligible for the Medicaid Program included pregnant women, children, and persons who were blind or

suffered from other disabilities and who could not afford the cost of health care.   The Medicaid

Program was a joint federal-state program pursuant to 42 U.S.C. § 1396b.   If a state elected to

participate in the Medicaid Program, the costs of Medicaid were shared by the federal government.

In return, participating states must comply with requirements imposed by the Social Security Act

and regulations promulgated under the Social Security Act.

d.      Under the Medicaid Program, each individual state, pursuant to broad national

guidelines established by federal statutes, regulations and policies:   (a) established its own

eligibility standards; (b) determined the type, amount, duration and scope of services; (c) set the

rate of payment or reimbursement for services; and, (d) administered its own Medicaid Program.

e.      The State of Alabama has participated in the Medicaid Program since its plan was

approved, effective January 1, 1970.   HHS, through its agency known as the Centers for Medicare

& Medicaid Services ("CMS"), was responsible for administration of the Medicaid Program and

provided approximately 73.5% of the funds to pay providers to deliver health care goods and

services under the Medicaid Program in Alabama.

f.      In return for receipt of federal subsidies, the State of Alabama was required to

administer its Medicaid Program in conformity with a state plan which satisfied the requirements

of the Social Security Act and the accompanying regulations under the Social Security Act.

g.      The State of Alabama administered its responsibilities under the Medicaid Program

through the Alabama Medicaid Agency ("Alabama Medicaid"), a single state agency responsible

for administering the Medicaid Program throughout the entire State of Alabama.

h.      In order to carry out its mission, Alabama Medicaid contracted with health care

providers who agreed to deliver services directly to those enrolled in the Medicaid Program and to

bill Alabama Medicaid for those services.   Alabama Medicaid was a "health care benefit program" as defined in Title 18, United States Code, Section 24(b).

i.        Defendant, YASHICA ROBINSON WHITE, M.D., was an enrolled provider under Alabama Medicaid.   As an enrolled provider, Defendant YASHICA ROBINSON WHITE, M.D., was authorized to submit and did submit claims to Alabama Medicaid for services she had rendered to eligible Medicaid recipients, including services for insertion of intrauterine devices ("IUDs") for contraceptive purposes.

j.        Claims for Medicaid reimbursement are submitted via paper or electronic versions of documents known as HCFA or CMS 1500 forms.   These CMS 1500 forms and their electronic versions contained the patient's identifying information, the provider's unique National Provider Identifier (or "NPI"), and a description of the items and services provided for which reimbursement was sought.   Alabama Medicaid had contracted with HP Enterprise Services, LLC, which acted as the fiscal agent on behalf of Alabama Medicaid and had responsibility for processing and paying claims on behalf of Alabama Medicaid which were submitted to Alabama Medicaid by enrolled Medicaid providers.   The NPI affixed to a claim represents to Alabama Medicaid that the associated provider actually rendered the services being billed, unless a modifier is appended to the claim.   Both the paper CMS 1500 form and its electronic version had a field for identifying the "rendering provider" on the actual claim itself.

k.        The items and services were identified in each claim submitted by a standard, uniform code number as set out in the American Medical Association's "Current Procedural Terminology" (or "CPT") manual, a book which listed terms and codes for reporting procedures performed by physicians and other health care providers or in the American Medical Association's

Healthcare Common Procedure Coding System (or "HCPCS") manual, another book which listed additional codes for reporting procedures performed by physicians and other health care providers. Alabama Medicaid had adopted the CPT and HCPCS for purposes of identifying items and services for which providers sought reimbursement. Each code corresponds to a specific service as described in the CPT book or the HCPCS book.

1.     The HCPCS manual classifies certain codes as "drug codes" for drugs administered by physicians. Included among the HCPCS drug codes is J7302, the code to be utilized for administering a levonorgestrel-releasing intrauterine contraceptive system, such as the Mirena® brand intrauterine device (or "IUD").

## COUNTS 1 - 5
### (Health Care Fraud)

2.     The factual allegations contained in Paragraph 1 of the Introduction section of this Indictment are realleged and incorporated herein as if copied verbatim.

3.     Beginning on or about March 2010, and continuing thereafter through at least March 21, 2012, in Lee County, Alabama, in the Eastern Division of the Middle District of Alabama, and elsewhere, the defendant, YASHICA ROBINSON WHITE, M.D., in connection with the delivery of and payment for health care benefits, items and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting interstate commerce, as defined in Title 18, United States Code, Section 24(b), that is, Alabama Medicaid, and to obtain by means of materially false and fraudulent pretenses and promises, money and property owned by and under the custody and control of Alabama Medicaid, in connection with the delivery of and payment for health care benefits, items and services.

-4-

## PURPOSE OF THE SCHEME AND ARTIFICE

4.      It was the purpose of the scheme and artifice for the defendant, YASHICA ROBINSON WHITE, M.D. to unlawfully enrich herself through the submission of false and fraudulent claims to Alabama Medicaid for insertion of IUDs and for providing FDA-approved IUDs to her patients when, in truth and in fact, the defendant knew that she had been purchasing and providing to her patients misbranded IUDs from a company in Great Neck, New York.

## THE SCHEME AND ARTIFICE

5.      The manner and means by which the defendant sought to accomplish and carry out the scheme and artifice included, among others:

6.      Defendant YASHICA ROBINSON WHITE, M.D., would submit and cause to be submitted to Alabama Medicaid through its fiscal agent, HP Enterprise Services, LLC, a Medicaid Provider Enrollment Application on or about September 1, 2010, which YASHICA ROBINSON WHITE had signed in order to begin billing Alabama Medicaid as a provider.

7.      Between on or about November 10, 2010, and on or about April 30, 2012, defendant YASHICA ROBINSON WHITE, M.D., submitted and caused to be submitted claims to Alabama Medicaid totaling approximately $60,300.00, for which YASHICA ROBINSON WHITE, M.D., received payments totaling approximately $47,104.35.

## ACTS IN EXECUTION OF THE SCHEME AND ARTIFICE

8.      On or about the dates specified as to each count below, in the Middle District of Alabama, and elsewhere, the defendant, YASHICA ROBINSON WHITE, M.D., in connection with the delivery of and payment for health care benefits, items and services, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a

health care benefit program affecting commerce, that is, Alabama Medicaid, and to obtain by materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of said health care benefit program, by submitting claims for foreign-sourced and misbranded IUDs provided to her patients, to wit:

| Count | Medicaid Patient | Date of Claim | Billed | Paid | HCPCS Code |
|---|---|---|---|---|---|
| 1 | E.F. | 8/11/11 | $900.00 | $703.05 | J7302 |
| 2 | V.G. | 8/16/11 | $900.00 | $703.05 | J7302 |
| 3 | L.D. | 9/13/11 | $900.00 | $703.05 | J7302 |
| 4 | N.J. | 9/14/11 | $900.00 | $703.05 | J7302 |
| 5 | I.M. | 9/17/11 | $900.00 | $703.05 | J7302 |

All in violation of Title 18, United States Code, Section 1347.

**COUNT 6**
**(Causing the Introduction of Misbranded Drug into Interstate Commerce)**

9.      The factual allegations contained in Paragraph of the Introduction section of this Indictment are realleged and incorporated herein as if copied verbatim.

10.     The United States Food and Drug Administration ("FDA") was the agency of the United States charged with the responsibility for protecting the health and safety of the American public by enforcing the Federal Food, Drug, and Cosmetic Act ("FDCA") and by assuring, among other things, that drugs bore labeling containing true and accurate information. The FDA's responsibilities under the FDCA include regulating the manufacture, labeling, and distribution of all drugs and drug components shipped or received in interstate commerce.

11.     The FDCA defined a "drug" to include (1) any articles intended for use in the cure, mitigation, treatment, or prevention of disease in man, (2) any articles intended to affect the structure or any function of the body of man, or (3) any article intended for use as components of any drugs.

12.     The FDCA defined "label" as a display of written, printed, or graphic matter upon the immediate container of any article.   Any requirement under the FDCA that a word, statement, or other information appear on the label shall not be considered to be complied with unless such word, statement, or other information also appears on the outside container or wrapper, if there is any, of the retail package of such article, or is easily legible through the outside container or wrapper.

13.     The FDCA defined "labeling" as all labels and other written, printed, or graphic matters (a) upon any article or any of its containers or wrappers, or (b) accompanying such article.

14.     A drug was misbranded if, among other things, its labeling (a) did not bear adequate directions for use, or (b) was not likely to be read and understood by the ordinary individuals under customary conditions of purchase and use.

15.     For all drugs distributed in the United States (with the exception of those intended for distribution in the Commonwealth of Puerto Rico), all words, statements, and other information on the label or labeling required by the FDCA must appear in the English language.

16.     Beginning on or about July 25, 2011, and continuing until on or about March 21, 2012, in Lee County, Alabama, in the Middle District of Alabama, and elsewhere, the defendant, YASHICA ROBINSON WHITE, M.D., caused the introduction and delivery for introduction into interstate commerce, from Great Neck, New York, to Opelika, Alabama, and elsewhere, of

Mirena® brand IUDs that were foreign, non-FDA approved IUDs and which were misbranded within the meaning of the FDCA in the following ways:

a.  Within the meaning of Title 21, United States Code, Section 352(c), in that the their label or labeling was not in such terms as to render them likely to be read and understood by the ordinary individuals under customary conditions of purchase and use in that the label or labeling was not in the English language; and,

b.  Within the meaning of Title 21, United States Code, Section 352(f)(1), in that their label and labeling failed to bear adequate directions for use.

All in violation of Title 21, United States Code, Sections 331(a) and 333(a)(1).

A TRUE BILL:

_____
Foreperson

GEORGE L. BECK, JR.
UNITED STATES ATTORNEY

_____
ROBERT G. ANDERSON
Assistant United States Attorney