IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | CR. NO. 3:14-cr-00126-MHT-TFM |
| | ) | |
| YASHICA ROBINSON WHITE, M.D. | ) | |

**UNITED STATES OF AMERICA'S RESPONSE
TO DEFENDANT'S MOTION TO DISMISS**

Comes now the United States of America (Government), by and through George L. Beck, Jr., United States Attorney for the Middle District of Alabama and the undersigned Assistant United States Attorney for the Middle District of Alabama, and respectfully submits this its response to the Motion to Dismiss filed by the defendant, Yashica Robinson White ("the defendant" or Robinson White). The Government respectfully requests that the Court deny the defendant's motion in its entirety. As grounds for its response, the United States of America would show the Court the following:

**I.     Procedural History**

1. The defendant was charged by the grand jury in a six-count indictment returned in this district on April 24, 2014.[1]  Docket Entry #1.  The indictment charges the defendant with five counts of health care fraud, all in violation of 18 U.S.C. § 1347, and one count of causing the introduction of misbranded drugs into interstate commerce, in violation of 21 U.S.C. § 331(a).

2. As is the custom and standing procedure in this Court, an arrest warrant was issued at the time the indictment was returned and the defendant made her initial appearance in this Court on April 30, 2014.  Docket Entry #2.  The defendant was released on an unsecured bond.

3. Trial in this case was initially set for August 11, 2014.  Docket Entry #11.

---

[1] As set forth in Section III.B. below, a superseding indictment was returned on February 11, 2015.

4. On July 23, 2014, the defendant filed her first Motion to Continue Trial Date and Waiver of Speedy Trial. Docket Entries #18 and #19. Based on the defendant's motion, the trial was continued to December 1, 2014. Docket Entry #20.

5. On October 15, 2014, the defendant filed her second Motion to Continue Trial, requesting another continuance of the trial date. Docket Entry #24. Based on that motion, the trial was continued again, to its current date of March 23, 2015. Docket Entry #25.

6. Pretrial conferences were held before Magistrate Judge Moorer on July 7, 2014 (Docket Entry #17), and September 4, 2014 (Docket Entry #23), and a telephone conference before District Judge Thompson on October 15, 2014 (Docket Entry #24). At none of those conferences did defense counsel make any request for discovery or suggest that additional discovery was needed in this case.

7. On January 20, 2015, two days before the most recent pretrial conference in this case on January 22, 2015 (Docket Entry #31), the defendant filed her motion to dismiss the indictment in this case (Docket Entry #29), seeking to dismiss the entire indictment in this case based upon allegedly selective prosecution of the defendant or, alternatively, to dismiss Count 6 of the indictment for failure to state an offense. The motion to dismiss was supplemented by a memorandum of law and some 15 separate exhibits. The Government now files this timely response.

8. A six-count superseding indictment was returned by the Grand Jury in this district on February 11, 2015. Count 6 of the superseding indictment replaces the former charge in that count (under 21 U.S.C. §331(a)) with a charge under 21 U.S.C. § 331(c).

## II.     Factual Background

8. This case had its start sometime in March 2013, when the Birmingham office of the Food and Drug Administration's Office of Criminal Investigations (FDA-OCI) received a referral from its headquarters related to an investigation of a company named Pharmalogical, Inc., d/b/a Medical Device King ("MDK").  *See* Declaration of Special Agent Robert D. Kuykendall, attached hereto as Government Exhibit 1.  The referral stemmed from a search warrant executed at the premises of MDK, which produced invoices indicating that some 1,100 physicians and clinics had received foreign or misbranded drugs from MDK.  *Id.*  Included among those invoices to physicians and clinics was Alabama Women's Wellness Clinic in Opelika, Alabama, where Yashica Robinson White maintains a solo medical practice.  *Id.*  Some of the other drugs sold by MDK appeared to be counterfeit or foreign sourced drugs.  Robinson White purchased intrauterine devices ("IUDs") which were misbranded based upon the fact that their labels and labeling were printed in a foreign language such as Finnish or Turkish, indicating they were to have been distributed in foreign countries.  *Id.*  After he learned that Robinson White's clinic was located in the Middle District of Alabama, Special Agent Kuykendall contacted the undersigned Assistant United States Attorney ("AUSA").  Kuykendall has declared that Robinson White was the only physician he was aware of among those identified in the search of MDK's premises whose practice was located in the Middle District of Alabama.  *Id.*

9. When Special Agent Kuykendall initially sought to discuss the matter with Robinson White, she requested to have time to consult an attorney.  *See* Government Exhibit 1.  When Kuykendall subsequently heard from an attorney on behalf of the defendant, he referred her attorney to the undersigned AUSA.  *Id.*

10. Counsel for Robinson White sought to bring her in for a proffer, and the undersigned AUSA provided a proffer letter for that purpose on May 6, 2013. *See* Government Exhibit 2. Negotiations then began to schedule a date for the proffer, and the attorneys ultimately settled on the date of June 18, 2013. *See* Government Exhibit 3. During the proffer session, Robinson White was advised that there was a separate investigation open in the Northern District of Alabama, where she had also ordered IUDs and her attorney requested time to check into the status of the investigation in that district. *See* Government Exhibit 1.

11. After several months had passed, the undersigned AUSA learned on November 5, 2013, that the issue of whether there would be a related case brought in the Northern District of Alabama still had not been resolved. *See* Government Exhibit 4. Nevertheless, the AUSA in this case agreed to hold off on pursuing charges against Robinson White in this district until the undersigned AUSA heard further from her lawyer. *Id.* Another follow-up inquiry was made by on January 13, 2014, but no specific response was received from the defendant's attorney at that point. *See* Government Exhibit 5.

12. Finally, on April 24, 2014, three months after the last inquiry was made to Robinson White's lawyer – and some 10 months after the proffer with Robinson White – this case was taken before the grand jury sitting in this district, at which time the original indictment was returned. Counsel for Robinson White was advised of the indictment, notified that Robinson White could self-surrender to avoid an actual arrest and advised that the Government would not be seeking any detention. *See* Government Exhibit 6. As is the custom in this district, when the defendant appeared at the federal courthouse, she was taken into custody by the United States Marshals Service pending her initial appearance before Magistrate Judge Moorer.

13.  Approximately one month after the indictment was returned – and almost one year after the proffer session with Robinson White – counsel for the defendant submitted a lengthy request for pretrial diversion, raising the issue of a non-adjudicated settlement for the first time in the parties' discussion of this matter.  *See* Government Exhibit 7 (which includes only the first page of the 11-page letter requesting pretrial diversion).  A meeting to discuss the request for pretrial diversion was scheduled for June 9, 2014, at which time counsel for the defendant met with the United States Attorney, the Criminal Chief, and the undersigned AUSA.  *See* Government Exhibit 8.  Approximately one month later, on July 11, 2014, the AUSA advised defense counsel that the request for pretrial diversion had been denied by the United States Attorney.  *See* Government Exhibit 9.

14.  Undeterred by the United States Attorney's denial of pretrial diversion, approximately one month later defense counsel decided to enlist two of his law partners to write the Deputy Attorney General to seek, in effect, an appeal of the United States Attorney's decision to deny pretrial diversion.  *See* Government Exhibit 10.  Although defense counsel, himself a former AUSA, is no doubt aware that the decision to grant or deny pretrial diversion is entirely discretionary with the United States Attorney, he sought this unusual appeal to the Deputy Attorney General.  On October 20, 2014, defense counsel's law partners were reminded by a letter from the Director of the Executive Office for United States Attorneys that pretrial diversion "is a discretionary matter completely within the purview of the United States Attorney."  *See* Government Exhibit 11.  At that point in time, it appeared that this matter was going forward to trial.

15.  Some four months later, apparently after learning of the dismissal of a misbranding case in the Eastern District of Tennessee, which was on appeal to the Sixth Circuit, Robinson White filed her present motion to dismiss, alleging for the first time selective prosecution in this case and suggesting for the first time that the charge brought under 21 U.S.C. § 331(a) fails to state an offense.

### III.  Government's Response and Argument

#### A.  There Has Been No Selective Prosecution

16.  The defendant suggests that she has been subjected to selective prosecution because other, allegedly similarly situated individuals, have yet to be prosecuted for their dealings with MDK.  In raising such an argument, the defendant faces a high hurdle:  "A defendant claiming selective prosecution must demonstrate that the . . . prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose" or intent.  *United States v. Armstrong*, 517 U.S. 456, 465 (1996).  Moreover, as the Supreme Court stated plainly in *Armstrong*, the decision whether to prosecute is to be accorded great deference in light of the Executive Branch's obligation and responsibility for the enforcement of federal criminal law:

> A selective prosecution claim asks a court to exercise judicial power over a "special province" of the Executive.  The Attorney General and the United States Attorneys retain broad discretion to enforce the Nation's criminal law. . . .  As a result, [t]he presumption of regularity supports their prosecutorial decisions and, *in the absence of clear evidence to the contrary*, courts presume that they have properly discharged their official duties.  In the ordinary case, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.

*Id.* at 464 (emphasis added).  Indeed, the "presumption of regularity should not be lightly discarded."  *United States v. Lewis*, 517 F.3d 20, 25 (1st Cir. 2008).  The defendant in this case

cannot clear the high hurdle of bringing forth clear evidence that the prosecutor acted impermissibly in bringing this case.  For that reason alone, her motion to dismiss on grounds of selective prosecution must fail.

17. Moreover, as the Sixth Circuit has pointed out:  "There is no right under the Constitution to have the law go unenforced against you, even if you are the first person against whom it is enforced, and even if you think (or can prove) that you are not as culpable as some others who have gone unpunished.  The law does not need to be enforced everywhere to be legitimately enforced somewhere."  *Futernick v. Sumpter Township*, 78 F.3d 1051, 1056-57 (6th Cir. 1996), *cert. denied*, 519 U.S. 928 (1996).  Additionally, more than 50 years ago, the Supreme Court made clear that "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation."  *Oyler v. Boles*, 368 U.S. 448, 456 (1962).

18. Despite Robinson White's suggestion that "mathematical evidence" supports her selective prosecution theory here because there are physicians and clinics in other districts who have not been prosecuted for dealing with MDK, this Court should not accept lightly the invitation to review the prosecutorial decision in this case.  Nor should the Court ignore the Supreme Court's cautionary statement that a prosecutor's "broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review."  *Wayte v. United States*, 470 U.S. 598, 607 (1985).  Indeed, the *Armstrong* court made it clear that delving into prosecutorial decision-making is to be disfavored by the courts and that such disfavor "also stems from a concern not to unnecessarily impair the performance of a core executive constitutional function."  *Id.*, 517 U.S. at 465.  This is not one of those cases where the Court should interfere, because Robinson White has failed to make out even a colorable claim of

selective prosecution in this case. Absent even a colorable claim, the Court should not intrude on the discretion committed to the prosecutor.

19. First and foremost, a defendant arguing selective prosecution "must establish (1) that others similarly situated have not generally been prosecuted and (2) that the government's discriminatory selection of him is invidious, or in bad faith – that is, based on constitutionally impermissible considerations, such as race or religion." *United States v. Lichenstein*, 610 F.2d 1272, 1281 (5th Cir. 1980) (*citing United States v. Johnson*, 577 F.3d 1304, 1308 (5th Cir. 1978)). In this case, Robinson White's argument fails in both respects: she can show neither that she was treated dissimilarly *by the prosecution in this case* as compared to other potential defendants whom the prosecution could have charged, nor that the decision to prosecute her was tied to any improper motive or intent. At best, all that Robinson White can show is that other physicians in other states have yet to be subjected to prosecution since the search at MDK was completed. Nothing more about their cases, the nature of the proof against these other doctors, the prosecutorial decision-making process involved in their cases – or even whether these other physicians are currently under investigation in all of the other districts – has been shown by Robinson White. She simply asks the Court to conclude (indeed, to assume) that they are "comparators" with her case based solely on their dealings with MDK.

20. Unfortunately, Robinson White's attempt to compare her case to all the other physicians who purchased counterfeit drugs or other misbranded drugs from MDK proves too much: those other physicians are scattered all across the country and well beyond the jurisdiction of this Court or the exercise of prosecutorial discretion *by the prosecutors in this case*. Indeed, as the Court is aware, there are some 94 United States Attorney's Offices across

the United States and its territories, including those in Puerto Rico, the Virgin Islands, and Guam. Each of those offices has prosecution priorities which, *in their respective districts*, are certainly subject to selective prosecution analysis. But to compare cases throughout and across *all* those districts simply casts too wide a net to support a selective prosecution argument.

21.  Given the difference in size of the various states and districts across the country, there are a multitude of prosecutorial thresholds tied to issues such as the amount of loss which are established by United States Attorneys for their districts, each exercising the discretion reserved to him or her within his or her district. A decision in a large district to prosecute only those health care fraud cases where the loss amount is more than a $1 million does not render a decision in another, smaller district to prosecute cases where the loss figure is only say, $50,000.00, suspect nor is it evidence of any type of selective prosecution against defendants who happen to be located in the district with the lower prosecution threshold. Rather, those differences simply serve to illustrate the exercise of prosecutorial discretion committed to each United State Attorney in his or her own district.

22.  To be clear, the only similarly situated individuals whom the Court should consider in deciding whether Robinson White was improperly singled out for prosecution are other defendants *in this district*.[2] Yet, as Special Agent Kuykendall's declaration makes clear, Robinson White was the one and only physician identified in the Middle District of Alabama for consideration in regard to her dealings with MDK. No other physician in the Middle District of Alabama was identified as having dealt with MDK, as the defendant's own motion exhibits make

---

[2] For example, in the case of *Gomillion v. Lightfoot*, 364 U.S. 339 (1960), the Supreme Court confined its review of the allegedly improper legislation to its impact upon black voters *in the City of Tuskegee*, not some larger group of voters throughout the State of Alabama or elsewhere. The similarly situated individuals to whom Robinson White can be and should be compared in this instance are those other potential defendants *in the Middle District of Alabama* who were – or might have been – selected for prosecution or non-prosecution. The facts make clear that the universe of those similarly situated in this district comprise only one defendant – Robinson White herself.

clear.  *See* Defense Exhibits 5 and 9.  The one and only potential defendant – Robinson White – was investigated, sufficient evidence of a crime was found, and she was then indicted in this district.  No other similarly situated defendant exists against which to compare Robinson White.  Thus, her selective prosecution argument fails on its face to meet the required threshold showing of discriminatory effect.

23.  Since Robinson White has failed to show that she was treated differently from similarly situated potential defendants in this district, the Court need not reach the second element, the discriminatory purpose prong of the selective prosecution analysis.  *See United States v. Jordan*, 635 F.3d 1181, 1188 (11th Cir. 2011), *cert. denied*, 132 S.Ct. 356 (2011) (district court correctly denied motion to dismiss for selective prosecution when defendant failed to establish discriminatory effect).  Absent a showing of discriminatory effect, the Court's inquiry should go no further.

24.  However, even if it were appropriate for this Court to consider discriminatory purpose here, the attempt by Robinson White to connect her prosecution in this case to an unrelated civil case involving an Alabama abortion statute is specious at best.  There is absolutely no evidence whatsoever offered by Robinson White that anyone tied to the prosecution in this case was even *aware* of the civil litigation brought against the State of Alabama in the *Planned Parenthood Southeast* case referenced by Robinson White, let alone that the prosecution had any knowledge that the physician referred to as "H2/P2" in that trial (Defense Exhibit 7 at p. 99) was Robinson White, if that is so.  Additionally, the suggestion that the decision to indict Robinson White was somehow strategically planned to occur in the last grand jury meeting before the start of the trial in *Planned Parenthood Southeast* borders on the

absurd, is utterly devoid of any evidentiary support and amounts to nothing more than assumption. In reality, the timing of Robinson White's last-minute selective prosecution claim is what appears to be suspect and strategically planned. If she and her counsel genuinely believed her prosecution was tied to the *Planned Parenthood Southeast* civil case heard last summer, one would expect that issue to have been brought to the Court's attention by way of motion well before now.

25. Robinson White's offhand suggestion that she was "not motivated by greed or profit considerations" when she chose to purchase misbranded IUDs from MDK in New York is also disingenuous. In fact, the prevailing charge for these IUDs when purchased from the legitimate distributor, CVS/Caremark, at the time alleged in the indictment was approximately $600 per IUD, for which Robinson White billed $900.00 and for which she was reimbursed by Medicaid in the set amount of $703.05. *See* Indictment at p. 6. When she purchased IUDs from MDK at $325/each or less, she was still reimbursed by Medicaid in the set amount of $703.05. To suggest that a decision by Robinson White to purchase these misbranded IUDs for significantly less than what the legitimate distributor charged, while still being reimbursed at the same, set amount by Medicaid for these misbranded IUDs, could be viewed as "not motivated by greed or profit" is to misstate the facts in this case.

26. The attempt to interject Robinson White's personal history into her unpersuasive selective prosecution argument is nothing more than an appeal to sympathy. Numerous other individuals might share similar stories of success against incredible odds, but they do not include resorting to criminal conduct such as purchasing misbranded IUDs for their patients. Since this self-serving personal success dialogue was not brought to the prosecutor's attention prior to the

return of the indictment in this case, it can hardly be argued now that Robinson White's so-called "personal story" was ignored by the AUSA when the decision to take her case to the grand jury was made.³ That story simply was not part of the investigation of the criminal conduct at hand.

27.  Having failed to make out a genuine or persuasive argument on her selective prosecution claim, Robinson White seeks to bootstrap her unfounded argument by resort to expansive discovery which reaches well beyond the bounds of any permissible discovery in this criminal case. The Court must deny her attempt to obtain discovery, if for no other reason than that she has not made out even a colorable selective prosecution claim to support her request to bolster it with the broad discovery she now seeks. Moreover, to obtain discovery in these circumstances, the defendant must overcome the "rigorous" burden for obtaining such discovery which is "only slightly lower than for a dismissal" of the charges. *Armstrong*, 517 U.S. at 468. Robinson White cannot meet that burden in this case.

28.  Because she has failed to show any discriminatory effect, Robinson White cannot obtain discovery in her attempt to show discriminatory intent because "failure on one branch dooms the discovery motion as a whole." *Lewis*, 517 F.3d at 26 (*citing United States v. Bass*, 536 U.S. 862, 863-64 (2002). Absent any colorable argument on the selective prosecution claim, the Court should deny the last-minute request for expansive discovery. The document discovery demands made by Robinson White (in her Exhibit 12) read like a set of requests for production of documents in a civil case and are little more than a fishing expedition in this criminal case.

29.  More importantly, the Government has met its discovery obligations under the Local Rules of this Court and the *Federal Rules of Criminal Procedure*. Rule 16(a)(1)(E) of the

---

³To the contrary, as noted in the recitation of facts, Robinson White gave a proffer in June 2013 and she was not indicted until almost a year later on April 24, 2014. At no time during that period did her counsel seek to make her "personal story" a part of the dialogue regarding whether she should be charged.

*Federal Rules of Criminal Procedure* does not entitle the defendant to any documents except those which are "material to the preparation of the defense" or "the government intends to use the item in its case-in-chief at the trial" or the document or item "was obtained from or belongs to the defendant." The broad discovery request tendered by Robinson White constitutes an attempt to support a last-ditch, meritless selective prosecution claim and the request far exceeds the Government's requirements under the Local Rules or under Rule 16. The discovery request should be rejected in its entirety.

30. In short, Robinson White seeks to overcome the presumption of regularity of this prosecution by asserting that the decision to charge her must have arisen from some illegitimate prosecutorial motive, rather than from the investigation simply having followed the facts where they led. However, she fails to offer any clear evidence to support her claim that she was singled out among other potential defendants in this district, and falls far short of satisfying the high burden required to overcome the presumption of regularity or to permit discovery on her claim. For all these reasons, her motion to dismiss the indictment based on selective prosecution must be denied by this Court.

### B. Count 6 in the Superseding Indictment Charges a Genuine Offense

31. The defendant next seeks to attack the validity of Count 6 of the original indictment, which charged her with causing the introduction into interstate commerce of misbranded drugs, namely, the IUDs she purchased from MDK. Robinson White rests her motion here on *Federal Rule of Criminal Procedure* 12(b)(3)(v) and contends that Count 6 does not state an offense.

32. Robinson White objects to the application of 21 U.S.C § 331(a) to her because, she explains, she was not in the business of *distribution* of misbranded products, but was instead a

*consumer* who merely received misbranded products. Consequently, she argues, she cannot be charged with causing the introduction into interstate commerce of these misbranded IUDs because she is a mere "innocent" consumer who ordered the offending products from the bad actor, MDK. Of course, this argument goes to the factual issue of Robinson White's intent and it also ignores the plain fact that Robinson White was not herself the *ultimate* consumer of these IUDs, because after receipt she then passed them along to her unsuspecting patients who should be considered the genuine "innocent consumers" in this scenario.

33. In any event, Robinson White's point has been rendered moot by means of the superseding indictment returned by the grand jury on February 11, 2015, which supersedes the charge in Count 6 under 21 U.S.C. § 331(a) with a charge under 21 U.S.C. § 331(c). *See* Government Exhibit 12. Even Robinson White admits that 21 U.S.C. § 331(c) undeniably criminalizes and prohibits receiving and then distributing a misbranded drug. Thus, Robinson White's motion to dismiss Count 6 should be denied.

### C. Conclusion

The defendant's motion to dismiss the indictment based upon selective prosecution is without merit. That aspect of the motion should be denied. Since the defendant filed her motion, a superseding indictment has been returned and Count 6 of the superseding indictment plainly states an offense. Thus, the remainder of the defendant's motion to dismiss has been rendered moot by the return of the superseding indictment.

WHEREFORE, the United States of America respectfully requests that the defendant's motion to dismiss be denied in all respects.

Respectfully submitted this the 12th day of February, 2015.

                    GEORGE L. BECK, JR.
                    UNITED STATES ATTORNEY

/s/ *Robert G. Anderson*
ROBERT G. ANDERSON (MSB No. 1589)
Assistant United States Attorney
131 Clayton Street
Montgomery, AL 36104
Phone: (334)223-7280
Fax: (334)223-7418
E-mail: robert.anderson@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2015, I electronically filed the foregoing Response and associated exhibits with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:  All attorneys of record.

                    Respectfully submitted,

/s/ *Robert G. Anderson*
ROBERT G. ANDERSON (MSB No. 1589)
Assistant United States Attorney
131 Clayton Street
Montgomery, AL 36104
Phone: (334)223-7280
Fax: (334)223-7418
E-mail: robert.anderson@usdoj.gov